UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**PIKEVILLE**

DREW MELTON, as personal        )
representative of the estate    )
of Lorraine Melton, and         )   Civil Action No. 7:06-45-JMH
BURDER MELTON, Spouse,          )
                                )
        Plaintiffs,             )   **MEMORANDUM OPINION AND ORDER**
                                )
v.                              )
                                )
                                )
MERCK & CO., INC., et al.,      )
                                )
        Defendants.             )
                                )

**        **        **        **        **

Before the Court are Defendants Kelly K. Cole, M.D. and Arthritis Center of Lexington's motion to dismiss for improper venue [Record No. 1] and Defendant Merck & Company, Inc.'s ("Merck") motion to stay this action pending a transfer decision by the Judicial Panel on Multidistrict Litigation [Record No. 4]. Additionally, Plaintiffs have moved the Court to remand this case to Pike Circuit Court [Record No. 7]. The Court being duly advised, the matters are ripe for review.

## I. BACKGROUND

The plaintiffs originally filed this action in Pike Circuit Court, alleging harm caused by the prescription drugs Vioxx, Bextra, and Celebrex. Plaintiffs' complaint alleges that on January 18, 2004, Lorraine Melton suffered a massive heart attack and that her use of Vioxx, Bextra, and Celebrex was a substantial factor in causing her death. The complaint asserts claims against

Merck, the manufacturer, marketer, and seller of Vioxx, and claims against Pfizer, the manufacturer, marketer, and seller of Bextra and Celebrex. Plaintiffs bring the following claims against Merck and Pfizer: products liability, negligence, failure to warn, fraud and false advertising, misrepresentation, breach of express and implied warranties, and violations of the Kentucky Consumer Protection Act. Plaintiffs also assert misrepresentation claims against two unknown sales representatives who allegedly marketed Vioxx, Bextra, and Celebrex to Lorraine Melton and her health care providers.

Additionally, Plaintiffs allege claims of negligence against Ronald F. Mann, M.D., Kelly K. Cole, M.D., and Teresa Robinson, ARNP, (collectively, "Health Care Providers") and their employers, Best Practice Family Health, PLLC and Arthritis Center of Lexington, PSC.[1] Plaintiffs claim that the Health Care Providers knew or should have known of the cardiovascular risks of taking Vioxx, Bextra, and Celebrex, failed to adequately consider those risks, and failed to obtain informed consent. Other than alleging that the Health Care Providers prescribed Vioxx, Bextra, and Celebrex to Lorraine Melton, the only allegations supporting the claims against them are the history of the public knowledge of the

---

[1] As the claims against Best Practice Family Health, PLLC and Arthritis Center of Lexington, PSC are entirely derivative of the claims against Dr. Mann, Dr. Cole, and Nurse Practitioner Robinson, they need not be considered separately.

dangers of these drugs.  Plaintiffs argue that this is sufficient to state a claim that Dr. Mann, Dr. Cole, and Nurse Practitioner Robinson knew or should have known of the dangers of prescribing Vioxx, Bextra, and Celebrex to Lorraine Melton.

Merck removed the action to this Court, claiming that the Court has subject matter jurisdiction based on diversity.  *See* 28 U.S.C. §§ 1332(a), 1441(a).  Plaintiffs are citizens of Kentucky, Merck is a citizen of New Jersey and Pfizer is a citizen of New York under 28 U.S.C. § 1332(c)(1), and the amount in controversy exceeds the jurisdictional minimum.[2]  Because the Health Care Providers are citizens of Kentucky, their presence in the suit, Plaintiffs argue, destroys diversity.  Merck contends, however, that these defendants were fraudulently joined so that Plaintiffs could avoid federal jurisdiction.

## II. STANDARD OF REVIEW

A case may only be removed if it could have been originally brought in federal court, and as there is no federal question in this case, jurisdiction is only proper if the parties are completely diverse and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. §§ 1332, 1441(a).  On a motion to remand, the defendant bears the burden of proving diversity jurisdiction.  *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000).

---

[2] The citizenship of the unknown sales representatives is disregarded when determining diversity jurisdiction.  28 U.S.C. § 1441(a).

3

The only issue is whether the Health Care Providers were fraudulently joined. The burden is on the defendants to show fraudulent joinder, and as with any dispute over removal, all doubts are to be resolved against removal. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999); *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

The Sixth Circuit has held that "if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, th[e] Court must remand the action to state court." *Id.* Any ambiguities in the relevant state law must be taken in the light most favorable to Plaintiffs. *See Alexander*, 13 F.3d at 949. Thus, the question before the Court is not whether Plaintiffs will prevail at trial on their claims against the Health Care Providers or whether the Court believes that the Health Care Providers were joined to defeat diversity. *See Jerome-Duncan Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) (holding that a plaintiff's motive in joining a non-diverse defendant is "immaterial to our determination regarding fraudulent joinder"). The question is whether, resolving all ambiguities in favor of

4

Plaintiffs, Merck has shown that there is no colorable basis for predicting that Plaintiffs could prevail against the non-diverse Health Care Providers in state court.

Several courts have noted that the standard for a defendant to show fraudulent joinder is even higher than the standard for succeeding on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838, 845-46 (S.D. Ohio 2002) (citing *Hartley v. CSX Transp., Inc.*, 187 F.3d 422 (4th Cir. 1999); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848 (3d Cir. 1992)). "[T]he benefit of the doubt given a plaintiff as part of the fraudulent joinder inquiry should be more deferential than even that given under Rule 12(b)(6)." *Id.* at 846.

### III. ANALYSIS

Although several motions are currently pending, the Court first addresses Plaintiffs' motion to remand. "A motion questioning subject matter jurisdiction must be considered before other challenges . . . ." *Martin v. Voinovich*, 840 F. Supp. 1175, 1185 (S.D. Ohio 1993). Merck argues that the issue of fraudulent joinder should be determined after transfer to the MDL court. However, as the determination of whether the Health Care Providers have been fraudulently joined depends on whether Plaintiffs have stated a claim under state law, *see Coyne*, 183 F.3d at 493, the MDL court would have to make fifty separate determinations. In the

5

Court's view, it is in the interest of efficiency to rule on the motion to remand before transfer.  To decide whether the non-diverse defendants have been fraudulently joined, the Court must address whether the complaint states sufficient facts to sustain a claim against the Health Care Providers under Kentucky law.

A.  *Negligence Under Kentucky Law*

A traditional medical negligence claim requires "the elements of duty, breach, causation and injury to be proven for the plaintiffs to prevail." *Grubbs v. Barbourville Family Health Ctr.*, 120 S.W.3d 682, 685 (Ky. 2003).  A physician has a duty to use the same degree of care and skill as would be expected of a reasonably competent physician in similar circumstances.  *See Mitchell v. Hadl*, 816 S.W.2d 183, 185 (Ky. 1991).  "[A] physician is obligated to inform a patient of the diagnosis and the known risks or dangers inherent therein so that the patient can make an intelligent decision regarding the course of treatment." *Grubbs*, 120 S.W.3d at 687.  In *Owensboro Mercy Health System v. Payne*, 24 S.W.3d 675 (Ky. Ct. App. 2000), the Kentucky Court of Appeals found that "[a]ll qualified health care providers within the range of care for [a patient] were under a duty to exercise their senses and intelligence to investigate and inspect for potential dangers to her." *Id.* at 679.  Under Kentucky law, a physician's failure to obtain informed consent is an actionable form of negligence.  *See Hawkins v. Rosenbloom*, 17 S.W.2d 113, 118-19 (Ky. Ct. App. 1999).

6

B.  *Inconsistent Pleadings*

Merck argues that the plaintiffs' malpractice claims contradict the gravamen of their complaint — that Merck and Pfizer hid the alleged dangers of Vioxx, Bextra, and Celebrex from everyone, including the Health Care Providers.  According to Merck, if it is true that they concealed this information from the Health Care Providers, then it is impossible that Plaintiffs will be able to show that the Health Care Providers knew or should have known of the risks.

This argument fails for two reasons.  First, giving Plaintiffs the benefit of all doubts, it is not clear that the allegations against Merck and Pfizer are necessarily inconsistent with the allegations against the Health Care Providers.  It is perfectly plausible that a drug manufacturer could engage in a pattern of concealing information about a drug's risks, and yet that reasonable Health Care Providers would still have known of the risks from the information that had come out.  Plaintiffs allege that certain information about the risks of these drugs was publicly known at various times notwithstanding Merck's and Pfizer's concealment, and that even aside from specific information about Vioxx, Bextra, and Celebrex, the cardiovascular risks associated with COX-2 inhibitors were known before the approval of these drugs.

Second, the Kentucky Civil Rules, like the Federal Rules,

allow alternative or inconsistent pleadings: "A party may . . . state as many separate claims . . . as he has regardless of consistency." Ky. R. Civ. P. 8.05(2). Several courts have rejected the argument that it is a fatal flaw for a plaintiff to argue that a drug company withheld information from the medical community and at the same time that a health care provider should have known of the risks of a particular drug. *See, e.g.*, *Collins v. Bacon*, No. 1:05-CV-211, 2005 WL 2429844, at *3 (E.D. Tenn. Sept. 30, 2005); *Lauderdale v. Merck & Co.*, No. 1:01-CV-418, 2002 WL 449423, at *2-3 (N.D. Miss. Feb. 4, 2002). Although other courts have ruled differently on this issue, this Court does not find that the partial inconsistency in Plaintiffs' complaint means that Plaintiffs do not have a colorable claim against the Health Care Providers in state court. Accordingly, the Court cannot find that the Health Care Providers have been fraudulently joined. Reading the complaint in the light most favorable to Plaintiffs, the allegations include facts that go to duty, breach, harm, and causation, and the Court concludes that Plaintiffs have alleged colorable claims of negligence against the non-diverse Health Care Providers.

C. *Dispensable Non-Diverse Defendants*

   Plaintiffs originally brought this case against diverse and non-diverse defendants in state court. Merck then removed the action to this Court, claiming that the non-diverse defendants were

8

fraudulently joined.  Merck argues that, despite a determination from this Court that the Health Care Providers were not fraudulently joined, the Health Care Providers are dispensable parties and asks the Court to sever Plaintiffs' claims against these non-diverse defendants so that (1) diversity jurisdiction can be achieved and (2) Plaintiffs, if they so desire, can proceed against the Health Care Providers in state court.

"'In general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties.'" *Lincoln Prop. Co. v. Roche*, 126 S. Ct. 606, 614 (2005) (quoting 16 J. Moore et al., Moore's Federal Practice § 107.14[2][c], p. 107-67 (3d ed. 2005)).  In this case, Plaintiffs *chose* to sue both the non-diverse Health Care Providers, who prescribed drugs to Lorraine Melton, and the diverse defendants who manufactured those drugs, Merck and Pfizer, in state court.  "While the plaintiffs' decision in this regard may have repercussions for purposes of diversity jurisdiction, there is no reason for a court to interfere with this inevitable consequence of a plaintiff's election unless the plaintiff . . . used an unacceptable device to defeat diversity." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 110 (3d Cir. 1990).  As noted, the Court finds that the non-diverse Health Care Providers were not fraudulently joined.  Moreover, Plaintiffs' claims satisfy the requirements of Federal Rule of

Civil Procedure 20:  "All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20.  With no support for alleging misjoinder under Rule 20, Merck's argument that Rules 19 and 21 can be employed after removal to create complete diversity and avoid remand is without merit.[3]  Save one unpublished case, Merck has not provided, and through its research the Court has not discovered, sound rationale for the Court to invoke Rule 21 and sever the claims brought by Plaintiffs against the Health Care Providers.

## IV. CONCLUSION

The burden on a defendant seeking to prove fraudulent joinder is high, and Merck has not met that burden.  In their complaint, the plaintiffs state colorable negligence claims against the non-diverse Health Care Providers under state law, which is all that they must do for their motion to remand to be granted.[4]

---

[3] The removal statute, 28 U.S.C. § 1441, "'should be strictly construed and all doubts resolved in favor of remand.'" *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006) (quoting *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996)).

[4] As subject matter jurisdiction is lacking, the Court does not reach the issues presented by Dr. Cole and Arthritis Center of Lexington's motion to dismiss for improper venue.

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

(1) That Plaintiffs' motion to remand [Record No. 7] be, and the same hereby is, **GRANTED**.

(2) That all other pending motions be, and the same hereby are, **DENIED AS MOOT**.

(3) That this action be, and the same hereby is, **REMANDED** to Pike Circuit Court.

This the 1st day of June, 2006.



**Signed By:**

**_Joseph M. Hood_**

**United States District Judge**

11